## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**RICHARD MONTANO,**

**Plaintiff,**

**vs.**

**GARY JOHNSON, Governor of New Mexico,**
**NEW MEXICO DEPARTMENT OF CORRECTIONS,**
**ROBERT J. PERRY, Secretary of Corrections,**
**JOHN SHANKS, Director of Adult Prisons,**
**DONNA WILPOLT, Deputy Corrections Secretary,**
**JERRY TAFOYA, Deputy Corrections Secretary,**
**JEFF SERNA, Interstate Compact Coordinator,**

**and**

**WACKENHUT CORRECTIONS CORPORATION,**
**ELOY MONDRAGON, Former Warden,**
**MAJOR RALPH LUCERO, Former Director of Security,**

**and**

**RONALD ANGELONE, Virginia Corrections Director,**
**STANLEY K. YOUNG, Wallens Ridge State Prison Warden,**
**and UNNAMED GUARDS AND OFFICERS,**

**Defendants.**

CIV 00        05 1 JC

**RICHARD L. PUGLISI**

### COMPLAINT FOR VIOLATIONS
### OF CONSTITUTIONAL RIGHTS

Plaintiff Richard Montano presents the following Complaint seeking declaratory,
compensatory, exemplary, and injunctive relief from Defendants' denials and violations of
his civil and constitutional rights, stating as follows:

1.      Plaintiff is **Richard Montano**. At the end of August 1999, Plaintiff was a prisoner living in E-Pod, at the Guadalupe County Correctional Facility, the Wackenhut Corporation prison in Santa Rosa, New Mexico.

2.      Defendants are **Gary Johnson**, New Mexico Governor; the **New Mexico Department of Corrections, Robert J. Perry**, Secretary of Corrections; **John Shanks**, Acting Deputy Secretary and Director of Adult Prisons; **Donna Wilpolt**, Deputy Secretary; **Jerry Tafoya**, Deputy Secretary; and **Jeff Serna**, the Interstate Compact Coordinator.

3.      Defendants include the **Wackenhut Corrections Corporation** and **Eloy Mondragon,** former Warden of the Guadalupe County Correctional Facility in Santa Rosa, New Mexico; and **Major Ralph Lucero**, former Director of Security at GCCF.

4.      Defendant **Ronald Angelone** is the Virginia Corrections Department Director and **Stanley K. Young** is the Warden of Wallens Ridge State Prison. The **Unnamed Guards and Officers** are State of Virginia employees and officials who personally abused and mistreated Plaintiff when he was under their control and custody at Wallens Ridge but whose names are not fully known at this time.  The Complaint will be amended when these names are known.

5.      Defendants Gary Johnson, Robert J. Perry, John Shanks, Donna Wilpolt, Jerry Tafoya, Jeff Serna, Eloy Mondragon, Major Ralph Lucero, Ronald Angelone, Stanley K. Young and the unnamed guards and officers who beat and abused Plaintiff at Wallens Ridge Prison are sued in their individual as well as their official capacities. The individually named

2

Defendants, including Governor Johnson and Secretary Perry, as well as the presently unnamed guards and officers, are alleged to have been directly, individually, and personally involved in the acts and omissions described herein or to have held supervisory or policy-making authority and control over those who did directly inflict unwarranted punishment and pain on Plaintiff. Secretary Perry, Warden Mondragon, Major Lucero, and Stanley K. Young share both direct and supervisory liability.

6.     Jurisdiction of the Federal Court is invoked pursuant to the Court's federal question jurisdiction under 42 USC Sections 1983, 1985, 1986, and the laws and Constitutions of the United States and the State of New Mexico.

## FACTUAL ALLEGATIONS

7.     On September 3, 1999, Defendants transferred Plaintiff and other minimum and medium security prisoners from the Guadalupe County Correctional Facility ("GCCF") in Santa Rosa, New Mexico, to Wallens Ridge State Prison ("WRSP") in Big Stone Gap, Virginia, a Supermax Prison, as punishment for alleged participation in the killing of a guard and a riot at the prison in Santa Rosa on August 31, 1999.

8.     Prior to August 31, Plaintiff was housed in E-Pod at the GCCF.

9.     Richard Montano did not participate in the killing of the guard or the riot.

10.    Defendants have not charged Plaintiff with any misconduct; they have not given Plaintiff any notice of any charges, and they have not held any hearing.

11.    Although the prison was relatively new, by August 1999 the provision of correctional services at the prison in Santa Rosa was far beneath reasonable and adequate standards of correctional management and operations.

12.    Classification and disciplinary systems were not functioning and Defendants were ignoring crucial institutional security issues and threats. The prison was built with serious design and structural flaws. The prison was understaffed and the staff was inexperienced and poorly trained.

13.    Plaintiff had been at the prison in Santa Rosa since March 3, 1999. He had no misconduct reports, he always went to his school and work duty, and he attended religious services every morning.

14.    By the end of August 1999, following serious incidents of violence at private prisons around the State, Governor Gary Johnson had expressed his concern about the differences between public and private correctional facilities.

15.    According to Governor Johnson and Corrections Secretary Perry, prisoners at private prisons who were involved in violent incidents wanted to be sent back to the State-run prisons, where living conditions were more comfortable than at the private prisons. Governor Johnson announced a new policy of sending such prisoners out-of-state instead.

16.    On Friday, August 27, 1999, the Corrections Department Defendants posted a Notice "in every area where inmates have movement at approximately 2:23 P.M.:"

4

**ATTENTION:**

**THIS DOCUMENT IS POSTED FOR INFORMATION TO ALL INMATES:**

**ANY FURTHER INCIDENTS OF VIOLENCE WILL RESULT IN TRANSFER OF INMATES TO OUT OF STATE FACILITIES.**

**YOU WILL NOT BE MOVED TO NEW MEXICO PRISONS, BUT WILL BE MOVED BASED ON EMERGENCY TRANSFERS TO INSTITUTIONS VIA THE INTERSTATE COMPACT AGREEMENT AND HOUSED THERE FOR AN INDEFINITE AMOUNT OF TIME.**

**YOUR INSTITUTION WILL BE LOCKED DOWN UNTIL SUCH TIME AS THE AFFECTED INMATE TRANSFERS HAVE OCCURRED.**

**STATE OF NEW MEXICO CORRECTIONS DEPARTMENT**

(EXHIBIT 1). The inmates correctly interpreted this Notice as a threat and a challenge.

17.    The posting of the Notice was done with the knowledge and approval of Governor Johnson, Secretary Perry, John Shanks, and Eloy Mondragon. The Notice was posted as part of a plan and policy of the State of New Mexico and the Department of Corrections to threaten and intimidate prisoners with out-of-state transfers to worse conditions of confinement.

18.    On Monday, August 30, 1999, there was an assault on two inmates in E-Pod at the GCCF. Although prison officials knew who the assailants were, they were not placed in segregation and at least one of the known assailants was apparently involved in the fatal stabbing of Officer Ralph Garcia in E-Pod just a day later, on August 31, 1999.

5

19.     On the evening of Tuesday, August 31, 1999, a prisoner attacked another prisoner in the Gym and the inmates were ordered to return to their units. Following the murder of the guard, some inmates set fires and destroyed property. Although Plaintiff was housed in E-Pod, he and his cell-mate remained locked in their cells throughout the disturbance. Plaintiff took no part in any destructive activity.

20.     The next day, September 1, 1999, Corrections Secretary Perry issued a press release promising that "I will have a firm and swift response to this incident."

21.     Early on the morning of Friday, September 3, 1999, Santa Rosa prison guards placed Plaintiff on a bus. He was chained around the waist, handcuffed, and had shackles placed on his ankles. Around 3 a.m. a convoy of about 20-vehicles left Santa Rosa for Albuquerque.

22.     Following a wait of several hours in buses on the runway at Kirtland Air Force Base, Plaintiff and the other Santa Rosa prisoners were loaded by federal marshals into an airplane for a three-hour trip. Upon their arrival at a small Tennessee airport the prisoners were forced to wait for hours without water in hot vans with windows sealed shut.

23.     On September 3, 1999, Corrections Secretary Perry announced:

> .... the immediate transfer of approximately 120 inmates incarcerated at the Guadalupe County Correctional Facility in Santa Rosa, to the Wallens Ridge Correctional Facility in Big Stone Gap Virginia.
>
> . . .
>
> The 120 inmates are the individuals from housing unit one, pods A & E, who participated in Tuesday nights' riot that resulted in the vicious killing of Correctional Officer Ralph Garcia.

Perry also announced that:

> The Wallens Ridge Correctional Facility is a Super Max Level 6 Prison, one of only two in the nation. The 120 inmates from GCCF will remain at Wallens Ridge Correctional Facility indefinitely. While at WRCF the inmates will be locked down for most of the day, programmed in their cells, and under the constant supervision of Correctional Officers armed with 12 gauge combat shotguns.

24.     The State of Virginia had recently opened its two new Supermax Prisons, Wallens Ridge and Red Onion. Those prisons were designed and intended to confine, control, and punish the worst and most violent prisoners in the country.

25.     Until they arrived at Wallens Ridge State Prison Plaintiff and the other New Mexico prisoners had no idea where they were being sent.

26.     Plaintiff was kept in a van near the Wallens Ridge Prison doors for over four hours. The prisoners were not allowed to speak. Guards shouted taunts and threats.

27.     At WRSP Plaintiff was immediately placed and held in a Segregation Unit.

28.     At WRSP Defendants kept Plaintiff in a small cell for the first five weeks, denying him any meaningful programs or activities, opportunity for exercise and recreation, medical, dental, and psychological attention, access to books or law library, telephone calls and other human contacts.

29.     The Virginia Defendants unreasonably and cruelly humiliated and threatened Plaintiff, and in many respects subjected him to cruel, harsh, and unusual conditions of control and confinement which were far different and more oppressive than any of Plaintiff's prior New Mexico prison experiences.

7

30.   At Wallens Ridge Plaintiff was subjected to extraordinarily oppressive and degrading measures, including absolute denial of privacy, strict control and limitation of movement, removal of social contact, absence of meaningful activity, extreme forms of punishment and behavioral modification, and continual threats from electroshock weapons, chemical sprays, firearms, shotguns, police dogs and other methods of control and discipline.

31.   During his first 35 days at Wallens Ridge Plaintiff was never allowed out of his cell without first being stripped, searched, shackled, chained, and handcuffed.

32.   On September 27, 1999, about 9:00 p.m. prison guards asked Plaintiff if he was "J.C." (Los Carnales); he said, "no, J.C., Jesus Christ." Guards then handcuffed Plaintiff and asked him if he had killed Ralph Garcia. When he said "no" they said "wrong answer," and punched him, slammed his face into the wall, and repeatedly shocked him with an electroshock weapon

33.   At the time of his transfer to Wallens Ridge Plaintiff was not a gang member, he was not an escape risk, he had not engaged in any violent activity in or out of prison, and he was not a troublemaker of any sort.

34.   Defendants have not given any reason or explanation for sending Richard Montano to Wallens Ridge and confining him in the Segregation Unit.

35.   Throughout the events described herein, Defendants forced Plaintiff to comply with and obey arbitrary, unfair, and maliciously imposed rules, regulations, policies and practices. The Virginia Defendants physically and emotionally attacked and abused Plaintiff without any valid reason, just cause, or due process.

8

## COUNT 1

## VIOLATIONS OF THE RIGHT TO DUE PROCESS

36.     After the inmate disturbance at Santa Rosa Defendants selected Plaintiff and others for transfer to the prison in Virginia without conducting any investigation, without stating any valid reason or justification, and without holding any hearing.

37.     The Fourteenth Amendment to the United States Constitution and Article II, Section 18, of the New Mexico Constitution provide the right to due process and equal protection of the laws.

38.     Defendants' transfer of Richard Montano to Virginia in chains and shackles, his placement in segregation in the Segregation Unit of a Super Maximum Security prison in Virginia, and the imposition of cruelly restrictive conditions of confinement constitute atypical and significant hardships and deprivations of Plaintiff's rights and interests.

39.     Defendants' acts and omissions and their treatment of Richard Montano described herein violate commonly accepted norms of human, social, and official conduct and behavior, and constitute human rights violations which are truly unconscionable and offensive to the concept of ordered liberty.

40.     Despite his conviction and sentence, Plaintiff has a remaining liberty interest which Defendants have denied or seriously compromised by their acts and omissions.

41.     Defendants have exhibited a pattern and practice of use of excessive force and deliberate indifference to (or sanctioning of) that use of force that compounded and

9

exacerbated the initial injustice perpetrated against Plaintiff and constituted additional and continuing violations of Plaintiff's right to procedural and substantive due process of law.

42.     The compelled transfer to Virginia was made secretly, starting in the middle of the night, without any notice and without Plaintiff's prior knowledge.  Defendants kept Plaintiff in chains, shackles, and handcuffs throughout the trip. Defendants' acts compelling Plaintiff's transport to Virginia in chains and shackles, placement in a Super Max prison, and the imposition of cruelly restrictive conditions of confinement constitute atypical and significant deprivations of Plaintiff's rights and interests.

43.     Defendants knew or should have known that Plaintiff was a non-violent person, who had not been involved in the incident at Santa Rosa and who had done nothing to deserve being sent to a Super-Maximum security institution, yet they transferred him and forced him to submit to such extreme and oppressive conditions of confinement nonetheless.

44.     Defendants knew or should have known that they were wrongfully punishing Plaintiff for something he didn't do, sending him defenseless into a monstrously oppressive institution with conditions of confinement and inmate management practices far more demeaning and confining than any encountered in any New Mexico prison, even those prisons housing New Mexico's most dangerous and violent criminals.

45.     Defendants' failure to hold a hearing prior to the transfer and their continued failure to re-classify or justify confining Plaintiff as a Super Maximum Security prisoner

throughout his confinement at WRSP constitute procedural and substantive due process denials which are shocking and offensive to the concept of ordered liberty and justice.

46.     Defendants have violated Plaintiff's right to procedural and substantive due process of law and are liable for the damages caused by their violations of Plaintiff's constitutional rights.

## COUNT 2

### VIOLATIONS OF THE RIGHT TO BE FREE
### OF CRUEL AND UNUSUAL PUNISHMENT

47.     The preceding allegations and claims are adopted.

48.     At the time Defendants transferred Plaintiff to WRSP, Plaintiff was a non-violent individual with deep religious beliefs who had no disciplinary infractions or misconduct on his prison record.

49.     By subjecting Plaintiff to the most harsh and extreme conditions of confinement and punishment and by the mistreatment of Plaintiff described herein, Defendants have cruelly and unusually inflicted punishment that goes far beyond the bounds of any acceptable or necessary correctional practice.

50.     The Eighth Amendment to the United States Constitution and Article II, Section 13, of the New Mexico Constitution prohibit the infliction of cruel and unusual punishment.

51.     Defendants knew that Plaintiff had nothing to do with the killing of the guard at GCCF or the disturbance that followed. They also knew, and it was clearly foreseeable,

11

that sending a blameless prisoner and other minimum and medium security prisoners like him to a Super Max penitentiary would inflict serious emotional harm and damage.

52.     The Virginia Defendants have established a policy and practice of using unnecessary and excessive force in the course of their searches and seizures which is neither justified or excused by any legitimate penological or correctional policies or practices.

53.     The force used against Plaintiff was not motivated by any good faith effort to restore order or maintain the security of the prison. To the contrary, the force used against Plaintiff was arbitrary, vicious, and malicious. It was intended to inflict pain and injury.

54.     Defendants are liable for any and all damages, including but not limited to damages for mental and emotional distress and physical pain and suffering, caused by their infliction of cruel and unusual punishment on Plaintiff.

## COUNT 3

## VIOLATIONS OF THE RIGHT TO BE FREE
## OF UNREASONABLE SEARCHES AND SEIZURES

55.     The preceding allegations and claims are adopted.

56.     The Fourth Amendment to the United States Constitution and Article II, Section 10, of the New Mexico Constitution prohibit unreasonable searches and seizures.

57.     Going to and from WRSP and at WRSP, Plaintiff was repeatedly and painfully restrained, shackled, handcuffed, and required to endure long periods of distress and discomfort.

12

58.     The Virginia Defendants forced Plaintiff to submit to numerous strip searches, especially while in the Segregation Unit, where prisoners are searched every time they leave their cell.  A Wallens Ridge memo details the procedure:

> Any time a strip search is conducted the inmate will be required to strip off all his clothing, turn around slowly, put his hands on his buttocks, spread his buttocks, squat to the ground while buttocks is still spread, and cough hard twice.
>
> This procedure will be followed any time a segregation inmate leaves his cell for any reason.  There will be no exceptions to this procedure.

(EXHIBIT 2).

59.     While he was at WRSP, Plaintiff was routinely and unnecessarily subjected to seizures and physical restraints, including use of shackles, handcuffs, chains, stun guns, and other restraint devices and weapons, without any penological justification but with the intent of threatening and inflicting pain and causing injury.

60.     While he was at WRSP, Plaintiff was routinely and unnecessarily subjected to searches, including use of strip searches and audio and video surveillance, with attendant physical and psychological invasions of his remaining privacy rights, without any penological justification but with the intent of degrading, humiliating, oppressing, damaging, and inflicting pain and injury.

61.     Defendants routinely and unnecessarily used the restraint devices and searches for the purpose of inflicting pain and psychological damage without any penological justification.

62.    By their policies, procedures, acts, and omissions, Defendants knowingly, deliberately, and unreasonably denied or severely compromised the residuum of privacy and personal rights retained by Richard Montano following his conviction and sentencing.

63.    The use of searches and seizures to inflict pain on Plaintiff constitutes a violation of the Fourth Amendment's requirement that all searches conducted under color of law must be reasonable as well as the Eighth Amendment prohibition against cruel and unusual punishment.

64.    Both New Mexico and Virginia Corrections Department Defendants are liable for any and all damages resulting from their violations of Plaintiff's fundamental right to be free of unreasonable, unwarranted and unjustified searches and seizures.

## COUNT 4

## VIOLATION OF INTERSTATE COMPACT

65.    The preceding allegations and claims are adopted.

66.    Defendants have entered into an Interstate Compact providing for transfers of prisoners to a different state.

67.    On September 3, 1999, New Mexico Corrections Secretary Robert Perry and Virginia Corrections Director Ron Angelone entered into a Memorandum of Understanding Between the Virginia Department of Corrections and the New Mexico Department of Corrections specifically providing for the transfer of the New Mexico prisoners to Wallens Ridge State Prison.

14

68. The Interstate Compact, codified as State law at 31-5-17 NMSA (2000), provides that inmates sent to another state's institutions "shall be treated in a reasonable and humane manner . . . .."

69. The Compact further provides that confinement in another state "shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state."

70. Defendants have breached the provisions of the interstate compact by failing to treat Richard Montano and others "in a reasonable and humane manner" and by failing to provide Plaintiff with the same rights he "would have had if confined in an appropriate institution" in New Mexico.

71. Plaintiff has been damaged as a result of Defendants' breach of the Interstate Compact and Defendants are liable to Plaintiff for damages sustained as a proximate result of their conduct.

## COUNT 5

## DENIAL OF EQUAL PROTECTION OF THE LAW

72. The preceding allegations and claims are adopted.

73. By selecting Plaintiff and forcing his transfer to Super Maximum Security confinement in Virginia Defendants acted arbitrarily and unreasonably and violated Plaintiff's right to equal protection of the law.

74.     At WRSP the New Mexico prisoners were segregated in their own section and were treated more harshly and cruelly than groups of prisoners from other states.

75.     By treating Plaintiff and many of the other Santa Rosa prisoners differently from other prisoners in New Mexico and by treating Plaintiff and other New Mexico prisoners differently and more harshly than other prisoners at WRSP, Defendants have denied Plaintiff's right to equal protection and are liable for damages resulting from their violations.

## COUNT 6

## SUPERVISORY AND MANAGEMENT LIABILITY

76.     The preceding allegations and claims are adopted.

77.     The gratuitous and malicious uses of force and abuses of official powers and due process rights described herein evidence supervisory and management malfeasance and misfeasance of constitutional dimensions.

78.     Defendants Perry, Shanks, Serna, Tafoya, Angelone, and Young knowingly and deliberately failed to monitor, control, or punish the excessive use of force against Plaintiff and the violations of his rights to due process and to be free of unreasonable searches and seizure, and the provision of necessary mental health, medical, and dental care.   In fact, those Defendants encouraged, condoned, and participated in such uses of force and such harsh and excessive conditions of confinement.

79.    Defendants engaged in a pattern and practice of using excessive force and of demonstrating deliberate indifference to the rights and interests of Plaintiff and other New Mexico prisoners. Defendants are liable for damages resulting from their excessive use of force and their deliberate indifference to Plaintiff's rights.

## COUNT 7

## CONSPIRACY

80.    The preceding allegations and claims are adopted.

81.    Defendants met, conversed, planned, and arranged between and among themselves and with their subordinates to execute the transfer, placement, and punishment of Plaintiff and the other New Mexico prisoners at Wallens Ridge State Prison.

82.    Defendants have acted individually and together with each other and other government officials and employees to plan, cause, and effect the transfer of Plaintiff and other prisoners to Wallens Ridge State Prison knowing that the transfer and placement would inflict extraordinary physical and emotional pain, suffering, and damage.

83.    Defendants have acted individually and together with each other and other government officials and employees to harm and injure Plaintiff through the excessive uses of force and violations of civil rights described herein.

84.    Plaintiff is entitled to the award of damages and other legal and equitable relief for injuries resulting from Defendants conspiracy and violations of his constitutional rights.

## COUNT 8

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, AND CLAIM FOR EXEMPLARY AND PUNITIVE DAMAGES

85.     The preceding allegations and claims are adopted.

86.     Defendants' conduct described herein was willful, wanton, deliberate, malicious, and was intended to and did punish and inflict pain and emotional harm upon Richard Montano for things he did not do.

87.     Defendants have acted with deliberate and utter indifference for Plaintiff's rights; their conduct in this case is shocking and egregious.

88.     Plaintiff is entitled to an award of exemplary and punitive damages to deter and prevent Defendants and others from committing such extreme and offensive acts in the future.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the award of the following relief:

A.     Declaratory and compensatory relief for damages resulting from violations of Plaintiff's liberty interests and rights to due process of law, including but not limited to damages for pain and suffering and emotional distress.

B.     Declaratory and compensatory relief for damages resulting from violations of Plaintiff's right to be free of unreasonable searches and seizures and cruel and unusual punishment.

18

C.      Declaratory and compensatory relief for damages resulting from violations of the Interstate Compact and other agreements among the parties.

D.      An Injunctive Order requiring Defendants to provide counseling, therapy, treatment, and care necessary to treat Richard Montano for the immediate and the long-term effects of his four and a half months at the Super Max prison in Virginia.

E.      Exemplary and punitive damages to discourage and prevent such and similar acts by Defendants and others in the future in the amount of at least One Million Dollars.

F.      Costs of this action and reasonable attorneys' fees.

G.      Such other and further equitable and legal relief as the Court deems just, proper, and necessary.

Respectfully submitted,

Paul Livingston
Attorney for Richard Montano
P.O. Box 90908
Albuquerque, NM 87199
(505) 823-4410

19

# ATTENTION:

# THIS DOCUMENT IS POSTED FOR INFORMATION TO ALL INMATES:

ANY FURTHER INCIDENTS OF VIOLENCE WILL RESULT IN TRANSFER OF INMATES TO OUT OF STATE FACILITIES.

YOU WILL NOT BE MOVED TO NEW MEXICO PRISONS, BUT WILL BE MOVED BASED ON EMERGENCY TRANSFERS TO INSTITUTIONS VIA THE INTERSTATE COMPACT AGREEMENT AND HOUSED THERE FOR AN INDEFINITE AMOUNT OF TIME.

YOUR INSTITUTION WILL BE LOCKED DOWN UNTIL SUCH TIME AS THE AFFECTED INMATE TRANSFERS HAVE OCCURRED.

STATE OF NEW MEXICO
CORRECTIONS DEPARTMENT

Plaintiff's
**EXHIBIT 1**

**WALLENS RIDGE STATE PRISON**

# Memo

**To:**    INMATE POPULATION

**From:**  MAJOR T. YATES

**Date:**  11/12/99

**Re:**    STRIP SEARCH PROCEDURE

---

LATELY THERE HAS BEEN SOME CONFUSION ABOUT THE STRIP SEARCH PROCEDURE HERE AT WALLENS RIDGE STATE PRISON. THIS MEMO WILL CLEAR UP ANY QUESTIONS YOU MAY HAVE ABOUT THIS PROCEDURE.

ANY TIME A STRIP SEARCH IS CONDUCTED THE INMATE WILL BE REQUIRED TO STRIP OFF ALL HIS CLOTHING, TURN AROUND SLOWLY, PUT HIS HANDS ON HIS BUTTOCKS, SPREAD HIS BUTTOCKS, SQUAT TO THE GROUND WHILE BUTTOCKS IS STILL SPREAD, AND COUGH HARD TWICE.

THIS PROCEDURE WILL BE FOLLOWED ANY TIME A SEGREGATION INMATE LEAVES HIS CELL FOR ANY REASON. THERE WILL BE NO EXCEPTIONS TO THIS PROCEDURE.

MAJOR T. YATES

**Plaintiff's**
**EXHIBIT 2**